IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-03091-PAB-CBS

MATTHEW RYAN SHERMAN

    Plaintiff,

v.

WILLIAM KLENKE, N.P.,
TIMOTHY CREANY, M.D.,
DOLORES MONTOYA, H.S.A.,
STEPHEN KREBS, M.D.,
CORRECTIONAL HEALTH PARTNERS, and
JOHN DOE,

    Defendants.

**ORDER**

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 81] issued on February 6, 2013.[1] The magistrate judge recommends that the Court grant in part and deny in part the Motion to Dismiss [Docket Nos. 46] filed by defendant Correctional Health Partners ("CHP") as well as the Motion to Dismiss [Docket No. 52] filed by defendants William Klenke, Timothy Creany, Dolores Montoya, and Stephen Krebs. On March 18, 2013, plaintiff Matthew Ryan Sherman filed timely objections [Docket No. 89] to the

---

[1] The magistrate judge issued his ruling from the bench on February 1, 2013 and provided plaintiff with a copy of the transcript from the hearing. See Docket Nos. 82-83. The Recommendation stated that plaintiff had fourteen days from the receipt of the transcript to file any objections. Docket No. 81. In addition, plaintiff received two extensions of time to file written objections. See Docket Nos. 85-88.

Recommendation. Therefore, the Court will "determine de novo any part of the magistrate judge's disposition that has been properly objected to."[2] Fed. R. Civ. P. 72(b)(3).

Plaintiff is a prisoner in the custody of the Colorado Department of Corrections ("DOC") at the Fremont Correctional Facility ("FCF"), in Canon City, Colorado. Plaintiff alleges that, on May 26, 2011, he informed the FCF medical staff that he suffered from a hernia. Docket No. 24 at 3, ¶ 12. The FCF medical staff scheduled an appointment with nurse practitioner Klenke to evaluate plaintiff's condition. *Id*. After the consultation, Mr. Klenke referred plaintiff to a specialist. *Id*. On June 27, 2011, plaintiff saw Dr. Reiger, a private surgeon, who advised plaintiff that his hernia required surgery. *Id*. at ¶ 15. Dr. Reiger submitted a request for approval of plaintiff's surgery to CHP, which is a private corporation that has contracted with the DOC to provide medical services to inmates at FCF. CHP denied this request on July 11, 2011. *Id*. at ¶ 16. Dr. Reiger then submitted a second request for surgery, which CHP denied on August 8, 2011. *Id*. at ¶ 17. Throughout this period, plaintiff alleges that Mr. Klenke's methods for treating his hernia were ineffective and did not improve his condition. *Id*. at 4, ¶ 22. In addition, plaintiff states that Mr. Klenke refused to give him medical excuses from work or to alter the course of treatment despite a lack of improvement in plaintiff's medical condition. *Id*. at 5, ¶ 34.

---

[2]In light of plaintiff's pro se status, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 n. 3 (10th Cir. 1991).

Plaintiff alleges that Ms. Montoya, a Health Service Administrator, denied his requests to be treated by a different nurse practitioner. *Id*. at 6, ¶¶ 44-45. Moreover, plaintiff claims that Dr. Creany denied his Step 2 grievance, although Dr. Creany was aware that Mr. Klenke's methods did not alleviate plaintiff's pain. *Id*. at 6, ¶ 42; Docket No. 63-1 at 6, ¶ 36.

In October 2011, plaintiff saw Dr. Reiger for another evaluation. Docket No. 24 at 3-4, ¶ 18. Dr. Reiger again advised plaintiff that his hernia required surgery and recommended that the FCF medical staff give plaintiff prescription pain medication. *Id*. at 4, ¶ 19.[3] Plaintiff alleges that, despite Dr. Reiger's recommendation for prescription pain medication, Mr. Klenke and Ms. Montoya refused to give him prescription pain medication. *Id*. at ¶ 20. On December 2, 2011, plaintiff underwent surgery for his hernia. *Id*. at ¶ 21.

As a result of these events, plaintiff brings claims against Mr. Klenke, Ms. Montoya, Dr. Creany, Dr. Krebs, and CHP for violations of his Eighth Amendment rights based on their refusal to approve his surgery and give him prescription pain medication. *Id*. at 5-8. In addition, plaintiff asserts claims for common law negligence against Dr. Krebs and CHP for negligently denying his requests for surgery. *Id*. at 8-11.

---

[3]Plaintiff's complaint does not allege with particularity when Dr. Reiger recommended prescription pain medication. *See* Docket No. 24 at 4, ¶ 19; Docket No. 63-1 at 4, ¶ 21. Construing plaintiff's complaint liberally, it appears that Dr. Reiger recommended prescription pain medication after the October 2011 visit. *See id*. A review of plaintiff's attachments shows that the FCF medical staff denied plaintiff's requests for prescription pain medication because the medical staff can only prescribe "controlled" medications on a short term basis. Docket No. 4 at 42. Given that plaintiff's surgery was not approved until October 24, 2011, *see* Docket No. 82 at 34, it seems likely that Dr. Reiger recommended prescription pain medication in October, once surgery had been approved.

With regard to plaintiff's claims against Mr. Klenke and Ms. Montoya, the Recommendation concluded that plaintiff did not sufficiently allege facts to establish a violation of his Eighth Amendment rights by Mr. Klenke and Ms. Montoya because these defendants did not have the authority to grant plaintiff's requests for surgery.[4] Docket No. 82 at 29-30.  Plaintiff objects to this part of the Recommendation and argues that the Court should not dismiss his Eighth Amendment claims against Mr. Klenke and Ms. Montoya based on these defendants' failure to order medical excuses from work or change the course of treatment for his hernia.  Docket No. 89 at 1-2.  The Recommendation, however, found that plaintiff had sufficiently alleged facts to establish a claim for violations of his Eighth Amendment rights based on Mr. Klenke and Ms. Montoya's failure to order prescription pain medication after Dr. Reiger approved of its use.  Docket No. 82 at 30.

The subjective prong of a deliberate indifference test is not satisfied "absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."  *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).  The Court agrees with the Recommendation's finding that plaintiff's claim based on his disagreement with Mr. Klenke and Ms. Montoya about the proper course of treatment for his hernia, before Dr. Reiger recommended prescription pain medication, does not state an Eighth Amendment claim.  *See Green v. Branson*, 108 F.3d 1296, 1303 (10th

---

[4]The Recommendation assumed, for the purposes of the motion to dismiss, that a hernia constitutes a sufficiently serious medical condition to satisfy the objective element of an Eighth Amendment claim.  Docket No. 82 at 28.  Accordingly, the Court will make the same assumption.  *See Sealock v. Colo.,* 218 F.3d 1205, 1209 (10th Cir. 2000).

Cir. 1997) (finding that a disagreement with a prison official's medical judgment does not constitute an Eighth Amendment violation). Similarly, plaintiff's allegations that Mr. Klenke and Ms. Montoya denied his requests for medical excuses from work do not state an Eighth Amendment claim because these types of decisions fall squarely within the scope of a prison doctor's medical judgment.[5]  *See, e.g., Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (noting that the types of medications prescribed are generally matters of medical judgment).  *Self*, 439 F.3d at 1232.  Accordingly, the Court finds no error with this aspect of the Recommendation.

Second, the Recommendation found that plaintiff did not sufficiently allege facts to state an Eighth Amendment claim against Dr. Creany because Dr. Creany could not be liable simply for denying plaintiff's grievance. Docket No. 82 at 30. Plaintiff objects, arguing that, because Dr. Creany was Mr. Klenke's direct supervisor, he had the authority to correct Mr. Klenke's deficient medical treatment and Dr. Creany's intentional failure to act led to plaintiff's injuries. Docket No. 89 at 2-3.

Generally, the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  Rather, there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  *Green*, 108 F.3d at 1302.  Because plaintiff does not allege that Dr. Creany had the authority to grant the request for surgery, the Court

---

[5]Mr. Klenke wrote a letter to Dr. Krebs requesting that CHP approve plaintiff's surgery.  Docket No. 4 at 48.

5

finds no error with the Recommendation's dismissal of plaintiff's claim against Dr. Creany with regard to the surgery.  *Gallagher*, 587 F.3d at 1069.

According to plaintiff's third amended complaint,[6] Dr. Reiger recommended that plaintiff receive prescription pain medication in October 2011.  Docket No. 24 at 4, ¶ 20; Docket No. 63-1 at 4, ¶ 21.  In addition, plaintiff's request for surgery was approved on October 24, 2011.  Docket No. 82 at 34.  However, Dr. Creany denied plaintiff's Step 2 grievance on August 30, 2011, two months before Dr. Reiger recommended prescription pain medication and CHP approved plaintiff's surgery.  *See* Docket No. 4 at 39.  Given that Dr. Creany denied plaintiff's grievance for prescription pain medication before the approval of plaintiff's surgery, *see id.*, and it appears that the medical staff at FCF can only prescribe "controlled" medications for a short period of time, Docket No. 4 at 42, the Court finds that plaintiff fails to allege an "affirmative link" between Dr. Creany's denial of the Step 2 grievance and Mr. Klenke's failure to provide pain medication.  *See Dodds v. Richardson*, 614 F.3d 1185, 1201 (10th Cir. 2010).  In addition, plaintiff has not alleged that Dr. Creany personally denied his requests for prescription pain medication following Dr. Reiger's recommendation.  Accordingly, the Court finds no error with this aspect of the Recommendation.  *See Arocho v. Nafziger*, 367 F. App'x 942, 954, 955 (10th Cir. 2010) (the Tenth Circuit does not "rule out the possibility of liability where the officer denying a grievance has an independent

---

[6] During the magistrate judge's February 1, 2013 oral ruling, he granted plaintiff's motion [Docket No. 63] to amend the third amended complaint and accepted the fourth amended complaint for filing, but only to the extent it encompassed an Eighth Amendment claim against Mr. Klenke and Ms. Montoya based on their failure to provide or change plaintiff's medication.  Docket No. 82 at 22-23.  The limitations on the fourth amended complaint are subject to plaintiff's objections.

responsibility for the wrong in question and the grievance provides the necessary notice of the wrong or the effective means to correct it," but such allegations require "plausible factual specification").

Third, the Recommendation found that plaintiff could not assert claims against Dr. Krebs for common law negligence or for violations of the Eighth Amendment because plaintiff did not sufficiently allege that Dr. Krebs personally denied the requests for surgery. Docket No. 82 at 8-11. To assert a viable Eighth Amendment claim against Dr. Krebs, plaintiff must establish that Dr. Krebs personally participated in the decision to deny his medical treatment. *Dodds*, 614 F.3d at 1201. Aside from conclusory allegations that Dr. Krebs is CHP's chief medical doctor and administrator, plaintiff does not sufficiently allege that Dr. Krebs made the decision to deny his surgery. Without an allegation of personal participation, plaintiff does not sufficiently allege facts to state a claim against Dr. Krebs both for violations of his Eighth Amendment rights and for common law negligence. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"). Accordingly, the Court finds no error with this aspect of the Recommendation.

Next, the Recommendation found that plaintiff did not sufficiently allege facts to raise an Eighth Amendment claim against CHP because plaintiff did not identify a CHP custom or practice that led to the alleged violation of his constitutional rights. Docket No. 82 at 11. Plaintiff objects to this aspect of the Recommendation and argues that CHP has a policy of first refusal, wherein it automatically denies prisoners' first requests for hernia surgery. Docket No. 89 at 8-9. In his fourth amended complaint, plaintiff

alleges that "[a]ffidavits, kites and grievances from other inmate patients show that [CHP's] denial seems to be the initial reaction to almost all inmate complaints and requests for hernia surgery." Docket No. 63-1 at 10, ¶ 68.

Plaintiff's claims against CHP are subject to the principles of municipal liability under *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 691 (1978). *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 & n.13 (10th Cir. 2003) (listing cases finding that the *Monell* doctrine extends to private defendants sued pursuant to § 1983). To hold CHP liable, plaintiff must sufficiently allege the existence of an official CHP policy or custom that was the "direct cause" or the "moving force" behind the alleged constitutional violations. *See Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

To show a policy or custom, plaintiff can allege (1) a formal regulation or policy statement, (2) an informal custom amounting to a widespread practice, (3) decisions of employees with final policymaking authority, (4) the ratification by a final decisionmaker of subordinates' actions, or (5) the failure to adequately train or supervise employees. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). Plaintiff's third amended complaint does not allege the existence of a formal regulation or policy statement issued by CHP. As noted above, plaintiff's fourth amended complaint alleges that CHP has an informal policy of denying all prisoners' initial requests for hernia surgery.[7] Docket No. 63-1 at 10-11, ¶ 68-69. Plaintiff's complaint and his objections,

---

[7]The Court notes that, even assuming CHP has an informal policy denying initial requests for surgery, CHP's first denial was not the cause of plaintiff's six-month delay. Assuming Dr. Reiger requested surgery after the first consultation on June 27, 2011, because CHP denied plaintiff's second request for surgery on August 8, 2011, the

however, provide no factual support for the allegation that CHP has an informal policy. Plaintiff has not alleged or presented evidence of the reasons CHP gave for denying his surgery requests. In addition, although plaintiff asserts that he can provide kites and grievances from other prisoners, he does not allege the names of specific prisoners, when the surgeries were denied, or the specific reasons given by CHP for the denials. Instead, plaintiff's argument is based on the fact that, because Dr. Reiger and Mr. Klenke both believed surgery was necessary, CHP's denial must have been motivated by costs as opposed to a medical judgment. However, without additional factual support, plaintiff's allegations of an informal policy are conclusory. *Iqbal*, 556 U.S. at 678 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is insufficient to state a claim). Thus, because plaintiff has not established that Dr. Krebs or any other policy making authority at CHP made the decision to deny his requests for surgery or ratified such decision based on an informal policy, plaintiff has not established a violation of his Eighth Amendment rights and the Court finds no error with this aspect of the Recommendation.[8] *See Porro*, 624 F.3d at 1328.

Finally, the Recommendation found that plaintiff could not state a claim against CHP for negligence without a Certificate of Review as required by Colo. Rev. Stat. § 13-20-602. Docket No. 82 at 7. The Recommendation reasoned that, because plaintiff will need to present expert testimony to prove his claim of negligence, a Certificate of

---

informal policy would have delayed plaintiff's surgery for approximately forty days.

[8]Instead, it appears that the Utilization Management Committee is in charge of denying prisoner requests. Docket No. 4 at 47.

Review is mandated.[9]  *See* Colo. Rev. Stat. § 13-20-602; *Hill v. Smithkline Beecham Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004) (noting that a plaintiff must provide a certificate of review even if he or she is not represented by counsel).  The magistrate judge recommended allowing plaintiff thirty days to file a Certificate of Review.  Docket No. 82 at 31.  Plaintiff objects to this part of the Recommendation and argues that he does not bring claims against CHP or its employees based on their professional negligence, but rather in their capacity as claims administrators.  Docket No. 89 at 6-7.  Rather, plaintiff argues that CHP was negligent because it denied his requests for surgery in order to cut costs and maximize profits.  *Id*. at 7-8.  Plaintiff appears to claim that, although CHP knew he suffered from a serious medical condition, it chose to deny his surgery for financial reasons.  *Id*.

Plaintiff's argument appears to be that he does not claim that CHP made a negligent medical judgment, but rather that CHP breached its duty to provide prisoners with medical care because it did not exercise medical judgment.  Docket No. 89 at 6-9.  Even assuming that plaintiff's cost cutting theory is credited,[10] the fact that an administrator denied surgery for financial reasons still raises the issue of whether that financial reason was improper given the medical consequences.  To prove these

---

[9]A plaintiff must file a Certificate of Review for every action for damages based on the alleged negligence of a licensed professional.  Colo. Rev. Stat. § 13-20-602(1)(a).  The purpose of the certificate is to "demonstrate that the plaintiff has consulted with a person who has expertise in the area and that the expert consulted has concluded that the claim does not lack substantial justification." *RMB Servs., Inc. v. Truhlar*, 151 P.3d 673, 675 (Colo. App. 2006) (citation omitted).

[10]Plaintiff's cost cutting rationale is also undermined by the fact that CHP eventually approved his surgery.

negligent consequences, plaintiff will need to present expert medical testimony. *See Martinez v. Badis*, 842 P.2d 245, 252 (Colo. 1992) (noting that the statute applies to every claim that requires proof of professional negligence as a predicate to recovery, regardless of the formal designation of such claims); *accord In re Donnell*, 479 B.R. 592, 595 (Bankr. D. Colo. 2012). Thus, regardless of the reasons why defendants denied plaintiff's surgery requests, plaintiff must first secure a Certificate of Review in order to prove his negligence claim. *See Hill*, 393 F.3d at 1118.

To the extent plaintiff argues that he may base an Eighth Amendment claim on the denial of his surgery by the John Doe defendant, the Court disagrees. An Eighth Amendment claim arises only when a medical professional either refuses to provide medical attention or delays the provision of medical care, even though the need for treatment would be obvious to a lay person. *Self*, 439 F.3d at 1232. However, the Eighth Amendment is not violated "absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Id*. None of the facts presented by plaintiff establish that the Utilization Management Committee or the John Doe defendant exercised an extraordinary degree of neglect when they denied plaintiff's requests for surgery. Instead, it appears these defendants considered plaintiff's symptoms and found that the surgery was elective and did not constitute an emergency. *See* Docket No. 4 at 42. An error by the Utilization Management Committee in determining that plaintiff's condition was not an emergency could constitute negligence, but it falls short of deliberate indifference. *See Self*, 439 F.3d at 1332-33 ("where a doctor orders treatment consistent with the symptoms presented and

then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law"); *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) ("negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation"). Moreover, to the extent plaintiff disagreed with the Utilization Management Committee's diagnosis of his condition, the Tenth Circuit has held a plaintiff does not have a right to a particular course of treatment. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006); *Estelle v. Gamble* 429 U.S. 97, 107 (1976) (noting that medical decisions that may be characterized as "classic example[s] of . . . matter[s] for medical judgment" include whether one course of treatment is preferable to another and these are beyond the purview of the Eighth Amendment).

Accordingly, the Court agrees with the Recommendation that plaintiff fails to raise an Eighth Amendment claim against the John Doe defendant. Because plaintiff cannot prevail on his Eighth Amendment claim against the John Doe defendant, that defendant is dismissed as it would be futile to allow plaintiff to pursue discovery to reveal his or her identify. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (noting that dismissal of a complaint is proper only if "it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."); *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (noting that dismissal of a pro se complaint is proper where it is obvious that plaintiff cannot prevail on the facts as alleged and it would be futile to give him an opportunity to amend).

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 81] is **ACCEPTED**. It is further

**ORDERED** that the Motion to Dismiss Plaintiff's Third Amended Complaint from Defendant Correctional Health Partners [Docket No. 46] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that the state defendants' Motion to Dismiss [Docket No. 52] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that the Motion for Extension of Time to Respond to Plaintiff's Objection to the Findings and Recommendations of the Magistrate Judge [Docket No. 90] is **DENIED** as moot. It is further

**ORDERED** that plaintiff's second and third claims for relief in the third amended complaint against Timothy Creany and Steven Krebs, respectively, are dismissed with prejudice. It is further

**ORDERED** that plaintiff's fourth claim for relief against Correctional Healthcare Partners in the third amended complaint is dismissed without prejudice. It is further

**ORDERED** that, within thirty days of this order, plaintiff shall file a Certificate of Review. It is further

**ORDERED** that the Clerk of the Court shall file plaintiff's Fourth Amended Complaint [Docket No. 63-1]. It is further

**ORDERED** that plaintiff's Fourth Amended Complaint [Docket No. 63-1] is limited to Eighth Amendment claims against William Klenke and Dolores Montoya based upon allegations that they failed to provide or change plaintiff's medication.

DATED March 28, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge